21-29

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **AARON WOLBER** | § | |
|     **Plaintiff** | § | |
| **vs.** | § | |
| | § | **C.A. No.**_____ |
| **ROUND ROCK INDEPENDENT** | § | |
| **SCHOOL DISTRICT** | § | |
|     **Defendant** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Plaintiff AARON WOLBER to file his "Plaintiff's Original Complaint" ("Complaint") as follow

### PREAMBLE

### *EXPERIENCED AND WONDERFUL MALE ELEMENTARY TEACHER THROW AWAY LIKE TRASH AND THEN PUBLICALLY CHASTISED FOR ASSERTING HIS RIGHTS*

*Plaintiff Aaron's singular goal in life is to enhance the education of students through the expression of Aaron's passion and innovative teaching methods. Having spent his entire teaching career with Defendant RRISD (defined hereafter), Plaintiff Aaron became the target of an "Original Inquisition Prosecution" by certain female colleagues leading to Aaron's Termination (defined hereafter) from RRISD simply because Aaron was a male teacher at an elementary school. Aaron then publically fought his Termination and Defendant RRISD went further to further try and publically ensure that Plaintiff Aaron would never again teach in the State of Texas. Left with no recourse, Plaintiff seeks redress of this Court for damages and equitable relief.*

## A.  <u>NATURE OF THE SUIT</u>

1.     Plaintiff Aaron (defined hereafter) is a male. Aaron had been an educator of the highest standard for years, until Defendant RRISD (defined hereafter) then terminated Aaron because of his being a male, elementary school teacher. Thereafter, Plaintiff Aaron filed a lawsuit in Federal Court seeking relief. Unfortunately, Defendant RRISD then took additional steps of discrimination against Aaron by publically alleging false accusations in an effort to permanently destroy Aaron's ability to ever teach again. Plaintiff Aaron exercised Aaron's right to file a complaint with the United States Equal Employment Opportunity Commission ("EEOC") and now seeks judicial redress in accordance with various statutory remedies available to Aaron.

2.     Plaintiff Aaron now files this original action for damages and equitable relief pursuant to:

> 42 U.S.C. §§2000e *et seq.*, being Title VII of the Title VII
> Act of 1964, as amended by the Title VII Act of 1991, as
> well as 28 U.S.C. §1343.

## B.  <u>PARTIES</u>

3.     Plaintiff AARON WOLBER ("Aaron") is an individual residing in the State of Texas.

4.      Defendant **ROUND ROCK INDEPENDENT SCHOOL DISTRICT**

("RRISD") is a public school district operating in the State of Texas as a political

subdivision of the state of Texas, receives funding from the United States through

the U.S. Department of Education and may be served with summons by service upon

its Acting Superintendent as follows:

> **DR. DANIEL PRESLEY, Acting Superintendent**
> **ROUND ROCK INDEPENDENT SCHOOL DISTRICT**
> **1311 ROUND ROCK AVENUE**
> **ROUND ROCK, TEXAS 78681**

### C.  <u>JURISDICTION and VENUE</u>

5.      The original  jurisdiction of this Court is in accordance with 28 U. S. C.

§ 1331 as involving a *federal question* proceeding arising under:

> 42 U.S.C. §§2000e *et seq.*, being Title VII of the Title VII
> Act of 1964, as amended by the Title VII Act of 1991, as
> well as 28 U.S.C. §1343 ("Title VII").

6.      Venue is proper in the Western District of Texas (Austin Division)

because Defendant RRISD operates its schools in, and from, Round Rock, Texas

and Williamson County, Texas, which is also where the underlying events occurred.

Round Rock and Williamson County are within the Western District of Texas and

within the Austin Division.

## D. <u>FACTUAL ALLEGATIONS</u>

**PART ONE:** *The Original Inquisition Prosecution and Termination of Plaintiff Aaron.*

7.      Plaintiff Aaron was employed by Defendant RRISD under a Term Contract tendered to Aaron on April 24, 2017 ("Contract"), under which Aaron was an elementary school teacher for the 2017-2018 school year. Specifically, Aaron taught various third-grade classes at Bluebonnet Elementary School ("Bluebonnet ES") for Defendant RRISD, being the same school he had taught at for eight years. Aaron was one of only a few men teaching non-sports related classes at Bluebonnet ES and within Defendant RRISD.

8.      On April 6, 2018, for the first and any only time prior to the Board's Second Meeting (defined hereafter), Defendant RRISD confronted Plaintiff Aaron, without any warning, of certain unsubstantiated and False Allegations (defined hereafter) related to Aaron's teaching methods and execution of school policies.

9.      The "Original Inquisition Prosecution" to remove Aaron from Defendant RRISD had begun.

10.     On April 9, 2018, Defendant RRISD placed Plaintiff Aaron on paid administrative leave, ostensibly stemming from the False Allegations having been raised just a few days previously.

11.     On May 4, 2018, Defendant RRISD gave Plaintiff Aaron notice that the Board of Trustees ("Board") for Defendant RRISD had voted to propose the non- renewal of Aaron's Contract for the upcoming 2018-2019 school year ("Proposed Non-Renewal").

12.     The Proposed Non-Renewal was based on the trumped up allegations against Plaintiff Aaron relating to Aaron's teaching methods ("False Allegations").

13.     On May 7, 2018, Plaintiff Aaron exercised his rights and filed an appeal/objection of the Proposed Non-Renewal.

14.     On August 6, 2018, the Board began, in a private session, the hearing to determine whether Plaintiff Aaron's Contract should be Non-Renewed (hereafter, "Board's First Meeting").

15.     The Board's First Meeting began at approximately 5:30 p.m. No time limits had been imposed for the presentations by Defendant RRISD or by Plaintiff Aaron.

16.    Over eight hours later, at 1:57 a.m. August 7, 2018, the Board recessed the Board's First Meeting.

17.    With the exception of testimony from a few of Plaintiff Aaron's Witnesses (defined hereafter), the entirety of the Board's First Meeting was consumed with the presentation by Defendant RRISD, which was nothing but repetitive hearsay offered by witnesses with no actual knowledge of the False Allegations.

18.    Plaintiff Aaron had identified twenty-four witnesses that would be testifying during the Board's First Meeting.

19.    When the Board recessed, the witnesses for Plaintiff Aaron, all of whom had been waiting for over eight hours to testify, were simply told to go home.

20.    On October 16, 2018, the Board reconvened the hearing to determine the Proposed Non-Renewal of Plaintiff Aaron's Contract ("Board's Second Meeting"). For the purposes hereof, the Board's First Meeting and the Board's Second Meeting may be collectively referred to as the "Board's Hearings."

21.    Leading the Original Inquisition Prosecution for Defendant RRISD during all the Board's Hearings was Sandra Carpenter ("Ms. Carpenter"), a

woman, with the President of Defendant RRISD's Board (defined hereafter) also being a woman.

22.    The Board's Second Meeting began where the Board's First Meeting had ended, with the calling of yet additional witnesses by the Defendant RRISD, offering repetitive witnesses with no actual knowledge of any of the False Allegations.

23.    During the Board's Second Meeting, Plaintiff Aaron was finally able to offer various witnesses (colleagues, students that Plaintiff Aaron had taught, and parents of students that Aaron had actually taught), all of whom had actual knowledge of Aaron's challenged teaching methods, and all of whom wholeheartedly and without reservation pleaded with the Board to continue Aaron's teaching career with Defendant RRISD.

24.    Further, for the first time since the Original Inquisition Prosecution began on April 6, 2018, Plaintiff Aaron was allowed an opportunity to defend himself against the False Allegations.

25.    During the Original Inquisition Prosecution of Plaintiff Aaron, the Board took testimony from the following employees of Defendant RRISD:

> (a)    Annette Vierra, Defendant RRISD's Executive for Human Resources, being a woman;

(a)    Carla    Amacher,    Defendant    RRISD's    Area
Superintendent for Round Rock Learning Community,
being a woman;

(b)    Tracy    Rieger,    Defendant    RRISD's    principal    at
Bluebonnet ES, being a woman;

(c)    Alma    Barrera,    a Defendant    RRISD    counselor    at
Bluebonnet ES, being a woman;

(d)    Samuel    Soto,    Defendant    RRISD's    principal    at
Bluebonnet ES;

(e)    Lindsey    McPheeters    ("McPheeters"),    a Defendant
RRISD staff attorney, being a woman;  and

(f)    Daniel    Presley,    Defendant    RRISD's    Senior    Chief of
Schools & Innovation.

Hereafter, the foregoing witness may be collectively referred to as the "RRISD

Witnesses."

26.    Of the total of seven witnesses called by Defendant RRISD to offer

false testimony against Plaintiff Aaron, five were women.

27.    The Board took testimony from the following witnesses called by

Plaintiff Aaron:

(a)    Former Student SBD ("FS SBD"), a former student of
Plaintiff Aaron at Bluebonnet ES;

(b)    Parent One, mother to FS SBD;

(c)    Parent Two, father to FS SBD;

(d)     Former Student BS ("FSB") a former student of Plaintiff Aaron at Bluebonnet ES and brother to Student F-GS;

(e)     Parent Three, mother to FS BS and Student F-GS, Student F-GS (being a student of Plaintiff Aaron during the 2017-2017 school year at Bluebonnet ES);

(f)     Parent Four, mother to Student AM, being a former student of Plaintiff Aaron at Bluebonnet ES during the 2016-2017 school year;

(g)     Parent Five, mother to Student SE, being a student of Plaintiff Aaron during the 2017-2017 school year at Bluebonnet ES;

(h)     Tara Schnell ("Ms. Schnell"), a Defendant RRISD Special Education Teacher, a member of the Special Education Team working with Plaintiff Aaron at Bluebonnet ES;

(i)     Courtney Allen ("Ms. Allen"), a Defendant RRISD teacher, working with Plaintiff Aaron in the 2016-2017 school year as well as the 2017-2018 school year at Bluebonnet ES;

(j)     Jennifer Farber ("Ms. Farber"), a Defendant RRISD teacher, working with Plaintiff Aaron for years including the 2017-2018 school year at Bluebonnet ES;

(k)     Mary Ellen Campbell ("Ms. Campbell"), a Defendant RRISD Educator Assistant for the special education department of Bluebonnet ES, having been assigned as an aid to Plaintiff Aaron; and

(l)     Plaintiff Aaron, having been a teacher at Bluebonnet ES for eight years.

Hereafter, the foregoing witness may be collectively referred to as "Plaintiff Aaron's Witnesses."

28.     Of  the four Plaintiff Aaron's Witnesses that were employees of Defendant RRISD, all four were women.

29.     The four women employees of Defendant RRISD testified strongly for Aaron and were each harshly criticized and attacked during cross-examination by Ms. Carpenter. However, only Aaron was terminated. None of the four women employees speaking up for Aaron received any negative employment actions.

30.     The Board took testimony during two separate meetings. The "First Board Meeting" was held but recessed and reconvened on a date months later for the "Second Board Meeting."

31.     At 1:06 a.m. the same night of the Second Board Meeting, the Board returned from executive session to vote on the Proposed Non-Renewal of Plaintiff Aaron's Contract.

32.     One member of the Board member (being a male) moved to retain Plaintiff Aaron and have a growth plan put in place for Aaron, but such motion died for lack of a  second.

33.     A motion was then offered to non-renew Plaintiff Aaron's Contract, and a *quick vote* was called for.

34.    However, before the *quick vote* could be taken, one male member of

the Board presented the following informed and passionate rebuke of the action the

Board was about to take against Plaintiff Aaron:

> *"I'd like to make a couple comments. First of all, I want to make a few comments about this whole process. This is the first time I've gone through this -- a non-renewal this far. We've had non-renewals come to us before.*
> *…*
> *I have a fundamental belief that a teacher has the right to run their classroom the way they want as long as it's within the bounds of the school district policies.*
> *…*
> *It bothers me that you [referring to Plaintiff Aaron] weren't given a growth plan. You weren't put in a memo. You had a memo that was brought up five years ago, and you were immediately put on administrative leave. That bothers me. That bothers me from the Administration. So going forward, I hope that never happens again, that there's never a surprise for any employee to have -- There should never be a surprise of any kind. They should always know what's going on.*
> *…*
> *You've also [referring to Plaintiff Aaron]-- You've committed a lot to your students, and I felt that. I think you have a lot of teachers and parents -- Whether you survive tonight in RRISD here, somewhere, I hope you don't give up on teaching. I think you have a strong passion for it, and I think you've reached and touched a lot of children.*
> *…*
> *I'd like for the Administration to look at its policy on how students are let -- be able to walk down the hall without supervision, how they're being allowed to go back and forth. And I'm looking at you, Dr. Flores, because you're one of my employees. You're my only employee. I'm not going to address the Administration -- that we address that*

*and that's never an issue before -- never an issue again like it has happened this time.*

*….*

*that neighborhood [referring to Bluebonnet ES], and we need people there to help those students as much as possible. It's one of our toughest, hardest, most challenging campuses that we have, and we need everybody there who is compassionate about students."*

35.    The Board then voted (during the Second Board Meeting), and the Termination was made by a three for, one against (being a male member),  and one abstaining  vote  of  the  Board  (again,  being  a  male  member).  The  Original Inquisition  Prosecution    had    succeeded    in    terminating    Plaintiff   Aaron ("Termination").

36.    A review of the evidentiary excerpts from the First Board Meeting and the Second Board Meeting (attached hereto and made a part hereof as Exhibit 1) leaves the only logical conclusion for the Termination of Plaintiff Aaron is that Defendant RRISD, acting through its Board, simply wanted to get rid of an exemplary elementary teacher because such teacher (Aaron) was male.

37.    As supported by such evidentiary excerpts, the entire Termination process was rife with discriminatory actions (based on Plaintiff Aaron's gender) committed by  Defendant RRISD, including but not being limited to the following:

## NO. ONE:

The investigation (directed by women of Defendant RRISD including Ms. McPheeters and Ms. Carpenter) into the False Allegations against Plaintiff Aaron was rushed and irrevocably flawed in a manner that women educators of Defendant RRISD are not subjected to.

## NO. TWO:

The rushed investigation by Defendant RRISD into the False Allegations was replete with the improper interrogations of third-grade students (by women) resulting in the improper creation of "statements" after said improper interrogations, and the subsequent reliance upon third-grade students' statements.

## NO. THREE:

The foregoing referenced flawed investigation improperly prejudiced and tainted the entirety of the Proposed Non-Renewal process undertaken by Defendant RRISD as to Plaintiff Aaron, resulting in an unlawful Termination, which women educators of Defendant RRISD are not subjected to.

## NO. FOUR:

The timing of the Non-Renewal Hearing conducted by Defendant RRISD women prosecutors was unduly prejudicial to Plaintiff Aaron, resulting in an unlawful Termination which female educators of Defendant RRISD do not face.

## NO. FIVE:

The Termination as to Plaintiff Aaron's Contract was based on witness testimony of female legal counsel for Defendant RRISD who offered improper and unsubstantiated evidence as to the credibility of Plaintiff Aaron, resulting in an unlawful Termination which female educators of Defendant RRISD do not face.

## NO. SIX:

The Termination as to Plaintiff Aaron's Contract was based entirely on third-party hearsay (as offered by Defendant RRISD, being mostly women) **without any witness testimony from persons with actual knowledge of the False Allegations, resulting in an unlawful Termination which female educators of Defendant RRISD do not face.**

## NO. SEVEN:

The Termination as to Plaintiff Aaron's Contract ignored all of the testimony (offered by Plaintiff Aaron) of persons with actual knowledge of the False Allegations, resulting in an unlawful Termination which female educators of Defendant RRISD do not face.

## NO. EIGHT

The Termination as to Plaintiff Aaron's Contract was a punishment by Defendant RRISD issued because of Plaintiff Aaron's (being a male elementary teacher) "development of creative and innovative techniques in instruction and administration using those techniques as appropriate to improve student learning," resulting in an unlawful Termination which female educators of Defendant RRISD do not face.

## NO. NINE:

The Termination as to Plaintiff Aaron's Contract was flawed because Plaintiff's evaluations were not properly considered, resulting in an unlawful Termination which female educators of Defendant RRISD do not face.

## NO. TEN:

The Termination as to Plaintiff Aaron's Contract was an arbitrary and capricious decision, resulting in an unlawful Termination which female educators of Defendant RRISD do not face.

## NO. ELEVEN:

The Termination as to Plaintiff Aaron's Contract was an act of discrimination based on the male gender of Aaron and Aaron's position as an elementary school educator.

38.     Facts supporting **NO. ONE**: The investigation conducted by Defendant RRISD into the False Allegations against Plaintiff Aaron was rushed and irrevocably flawed, include but are not limited to the following:

      (a)    On April 6, 2018, Plaintiff Aaron was given written notice of certain concerns, the Original Inquisition Prosecution has begun;

      (b)    On April 9, 2018, Plaintiff Aaron was placed on administrative leave;

      (c)    Plaintiff Aaron was given only three hours' notice prior to being interrogated by counsel for Defendant RRISD;

      (d)    Plaintiff Aaron had no opportunity to speak with his legal counsel prior to being interrogated by counsel for Defendant RRISD;

      (e)    After being interrogated by counsel for Defendant RRISD, no one from Defendant RRISD ever again interviewed or discussed the False Allegations with Plaintiff Aaron until his testimony at the Second Board Meeting;

      (f)    On May 3, 2018, the Board considered the Defendant RRISD's recommendation to non-renew Plaintiff Aaron and voted to proceed with the Proposed Non-Renewal;

(g)     Because the May 3, 2018 Board decision to
        procced with the Notice of Proposed Non-
        Renewal was a decision based on a
        recommendation from Defendant RRISD, it is
        reasonable to assume that such recommendation
        had been prepared at least several days prior to
        the May 3, 2018 Board decision;

(h)     Based on the foregoing time lime of events, it
        is reasonable to state that the "Investigation" into
        Plaintiff Aaron was no longer than three weeks
        in length;

(i)     Although all of the students of Plaintiff Aaron's
        class were interviewed, only the RRISD Derived
        Student Statements (defined below) were relied
        upon for the Investigation, with all of the other
        student statements being ignored;

(j)     None of the RRISD Derived Student Statements
        were discussed or even reviewed with the parents
        of the respective students during the three week
        Investigation;

(k)     None of Plaintiff Aaron's Witnesses were
        interviewed by Defendant RRISD during the three
        week Investigation;

(l)     Key to Defendant RRISD's Investigation was a
        written hearsay statement of Alexus Martinez, a
        student teacher who had spent a total of five (5)
        days in the classroom of Plaintiff Aaron;

(m)     Key to Defendant RRISD's Investigation was a
        written hearsay statement of Penny Oates, an
        Assistant Principal at Bluebonnet ES wherein Ms.

Oates acknowledged that she "was not privy to the current concerns" related to Plaintiff Aaron;

(n)     Key to Defendant RRISD's Investigation was a written hearsay statement of Sonia Taylor;

(o)     Key to Defendant RRISD's Investigation was a written but unsigned hearsay statement of Madison Kennedy;

(p)     Key to Defendant RRISD's Investigation was a written hearsay statement of Amanda Keith;

(q)     Key to Defendant RRISD's Investigation was a written but hearsay statement of Ms. Reiger;

(r)     Key to Defendant RRISD's Investigation was a written but hearsay statement of Ms. Barrera;

*Hereafter, the foregoing hearsay statements of Ms. Martinez, Ms. Oates, Ms. Taylor, Ms. Kennedy, Mr. Keith, Ms. Reiger, and Ms. Barrera shall be collectively referred to as the "RRISD Hearsay Women Employee Statements"*

(s)     Key to Defendant RRISD's Investigation was an interrogation of Plaintiff Aaron conducted by Ms. Carpenter, a female attorney employed by Defendant RRISD; and

(t)     Key to Defendant RRISD's Investigation was an interrogation of Plaintiff Aaron conducted by Ms. McPheeters, a female attorney employed by Defendant RRISD;

*Hereafter, the foregoing interrogations of Plaintiff Aaron conducted by Ms. Carpenter and Ms. McPheeters shall be collectively referred to as the "RRISD Women Lawyer Interrogations."*

(u)     Prior to, or even during, the limited discussions with Plaintiff Aaron during the RRISD Investigation, Plaintiff Aaron was never given the opportunity to review any of the RRISD Derived Student Statements or the RRISD Hearsay Women Employee Statements; and

(v)     Women educators within the elementary schools of Defendant RRISD are not subjected to the foregoing.

39.     Facts supporting **NO. TWO**: The rushed investigation by Defendant RRISD into the False Allegations was replete with the improper interrogations of third-grade students by female employees of Defendant RRISD, the improper creation of "statements" after said improper interrogations, and the subsequent reliance upon third-grade students' statements, include but are not limited to the following:

(a)     Defendant RRISD's female employees transcribed statement and notes from interview with Student A-KG;

(b)     Defendant RRISD's female employees transcribed statement and notes from interview of Student B-GM;

(c)     Defendant RRISD's female employees transcribed statement and notes from interview of Student C-RV;

(d)     Defendant RRISD's female employees transcribed statement and notes from interview of Student D-DS;

(e)     Defendant RRISD's female employees transcribed statement and notes from interview of Student E-TN;

(f)     Defendant RRISD's female employees transcribed statement and notes from interview of Student F-GS;

(g)     Defendant RRISD's female employees transcribed statement and notes from interview of Student G-LR;

*Hereafter, the foregoing student statements shall be collectively referred to as the "RRISD Women Derived Student Statements"*

(h)     The RRISD Women Derived Student Statements each contain administration created subjective interpretation of the actual written statements provided by the respective students;

(i)     The No parent was presented during the interviews of the foregoing students, which resulted in the creation of the RRISD Women Derived Student Statements;

(j)     All of the RRISD Women Derived Student Statements were the worst form of blatant hearsay;

(k)   Women educators within the elementary schools of Defendant RRISD are not subjected to the foregoing.

40.   Facts supporting **NO. THREE**: The foregoing referenced flawed investigation improperly prejudiced and tainted the entirety of the Proposed Non-Renewal process undertaken by Defendant RRISD as to Plaintiff Aaron, resulting in an unlawful Termination, include but are not limited to the following:

(a)   Defendant RRISD's Investigation consisted entirely of the RRISD Women Derived Student Statements, the RRISD Women Hearsay Employee Statements, and the RRISD Women Lawyer Interrogations;

(b)   The May 3, 2018 Board decision to proceed with the Proposed Non-Renewal of Plaintiff Aaron was based entirely on Defendant RRISD's Investigation, which consisted solely of the RRISD's Women Derived Student Statements, the RRISD Women Hearsay Employee Statements, and the RRISD Women Lawyer Interrogations;

(c)   During the Board's First and Second Hearing as to the Proposed Non-Renewal, heavy emphasis was placed upon the RRISD's Investigation, including the RRISD's Women Derived Student Statements, the RRISD Women Hearsay Employee Statements, and the RRISD Women Lawyer Interrogations;

(d)     The testimony of the employees of Defendant RRISD who testified as RRISD Witnesses was based solely on RRISD's Investigation including the RRISD's Women Derived Student Statements, the RRISD Women Hearsay Employee Statements, and the RRISD Women Lawyer Interrogations; and

(e)     Women educators within the elementary schools of Defendant RRISD are not subjected to the foregoing.

41.     Facts supporting **NO. FOUR**: The timing of the Non-Renewal Hearing conducted by Defendant RRISD was unduly prejudicial to Plaintiff Aaron, resulting in an unlawful Termination, include but are not limited to the following:

(a)     The recess of the First Board Meeting prevented as many as two dozen witnesses ready to testify on behalf of Plaintiff Aaron, even after such witnesses had waited over eight hours expecting to testify;

(b)     Because the First Board Meeting was recessed and not reconvened until October 16, 2018, Board members Mason Moses and Steve Math were not present during the Second Board meeting, depriving Plaintiff Aaron a consistent panel of Board members acting as the trier of fact and

(c)     Women educators within the elementary schools of Defendant RRISD are not subjected to the foregoing.

42.     Facts supporting **NO. FIVE:** The Termination as to Plaintiff Aaron's Contract was based on witness testimony of female legal counsel for Defendant

RRISD who offered improper and unsubstantiated evidence as to the credibility of Plaintiff Aaron, resulting in an unlawful Termination, include but are not limited to the following:

     (a)    As previously referenced, Ms. McPheeters (a female lawyer employed by Defendant RRISD) testified during the Second Board Hearing, over the objection of counsel for Plaintiff Aaron;

     (b)    During the testimony of Ms. McPheeters, Ms. McPheeters offered (a) negative opinion as to the veracity and credibility of Plaintiff Aaron, and (b) a positive opinion as to the RRISD Investigation;

     (c)    McPheeters' improper testimony as to Plaintiff Aaron was highly prejudicial to Plaintiff Aaron and should not have been admitted;

     (d)    Ms. McPheeters' improper testimony as to the propriety of the RRISD Investigation and conclusions drawn therefrom was highly prejudicial to Plaintiff Aaron and should not have been admitted;

     (e)    During the cross-examination of Plaintiff Aaron, Ms. Carpenter (as counsel for Defendant RRISD) challenged the veracity and credibility of Plaintiff Aaron based on an interrogation conducted by Ms. Carpenter herself;

     (f)    The cross-examination of Plaintiff Aaron by Ms. Carpenter (as counsel for Defendant RRISD) which challenged the veracity and credibility of Plaintiff Aaron based on an interrogation conducted by Ms.

Carpenter herself was improper and highly prejudicial to Plaintiff Aaron; and

(g)     Women educators within the elementary schools of Defendant RRISD are not subjected to the foregoing.

43.     Facts supporting **NO. SIX**: The Termination as to Plaintiff Aaron's Contract was based entirely on third-party hearsay (as offered by Defendant RRISD) without any witness testimony from persons with actual knowledge of the False Allegations, resulting in an unlawful Termination, include but are not limited to the following:

(a)     The entirety of the RRISD Investigation was improper hearsay and cannot support the Termination;

(b)     All of the RRISD Women Derived Student Statements were improper hearsay and cannot support the Termination;

(c)     All of the RRISD Women Hearsay Employee Statements were improper hearsay and cannot support the Termination;

(d)     The RRISD Women Lawyer Interrogations were based solely on the improper RRISD Investigation and cannot support the Termination;

(e)     None of the female RRISD Witnesses had any actual knowledge of any of the False Allegations, and such testimony cannot support the Termination, including the testimony of:

       aa)   Ms. Vierra, Defendant RRISD's Executive for Human Resources*;*

       bb)   Ms. Amacher, Defendant RRISD's Area Superintendent for Round Rock Learning Community;

       cc)   Ms. Rieger, Defendant RRISD's principal at Bluebonnet ES*;*

       dd)   Ms. Barrera, a Defendant RRISD counselor at Bluebonnet ES; and

       ee)   Ms. McPheeters, a Defendant RRISD staff attorney;

    (f)   Defendant RRISD failed to call as witnesses the only persons with purported actual knowledge of the False Allegations, which would have included Ms. Martinez, Ms. Oates, and Ms. Keith; and

    (g)   Women educators within the elementary schools of Defendant RRISD are not subjected to the foregoing.

44.   Facts supporting **NO. SEVEN:** The Termination as to Plaintiff Aaron's Contract ignored all of the testimony (offered by Plaintiff Aaron) of persons with actual knowledge of the False Allegations, resulting in an unlawful Termination, include but are not limited to the following:

    (a)   All of the testimony of Plaintiff Aaron's Witnesses was based on actual, personal knowledge which contradicted in total the False Allegations, including the testimony of:

aa)    FS SBD, a former student of Plaintiff Aaron at Bluebonnet ES;

bb)    Parent One, mother to FS SBD;

cc)    Parent Two, father to FS SBD;

dd)    FS BS, a former student of Plaintiff Aaron at Bluebonnet ES and brother to Student F-GS;

ee)    Parent Three, mother to FS BS and Student F-GS, Student F-GS (being a student of Plaintiff Aaron during the 2017-2017 school year at Bluebonnet ES);

ff)    Parent Four, mother to Student AM, being a former student of Plaintiff Aaron at Bluebonnet ES during the 2016-2017 school year;

gg)    mother to Student SE, being a student of Plaintiff Aaron during the 2017-2017 school year at Bluebonnet ES;

hh)    Tara Schnell, a Defendant RRISD Special Education Teacher, a member of the Special Education Team working with Plaintiff Aaron at Bluebonnet ES;

ii)    Courtney Allen, a Defendant RRISD teacher, working with Plaintiff Aaron in the 2016-2017 school year as well as the 2017-208 school year at Bluebonnet ES;

jj)    Jennifer Farber, a Defendant RRISD teacher, working with Plaintiff Aaron for years

including the 2017-2018 school year at Bluebonnet ES;

kk)    Mary Ellen Campbell, a Defendant RRISD Educator Assistant for the special education department of Bluebonnet ES, having been assigned as an aid to Plaintiff Aaron;

ll)    Aaron Wolber, the Plaintiff; and

(b)    Women educators within the elementary schools of Defendant RRISD are not subjected to the foregoing.

45.    Facts supporting **NO. EIGHT**: The Termination as to Plaintiff Aaron's Contract was a punishment by Defendant RRISD issued because of Plaintiff Aaron's (as a male elementary teacher) "development of creative and innovative techniques in instruction and administration using those techniques as appropriate to improve student learning," resulting in an unlawful Termination, include but are not limited to the following:

(a)    All of the testimony of Plaintiff Aaron's Witnesses (based on actual, personal knowledge which contradicted in total the False Allegations) described creative and innovative techniques used to improve the learning of Plaintiff Aaron's witnesses;

(b)    Various of the Defendant RRISD Female Witnesses questioned or disapproved of Plaintiff Aaron's teaching methods (notwithstanding that Plaintiff Aaron had utilized such methods for years at Bluebonnet ES prior to the 2017-2018 school year);

(c)    In attempting to reconcile the disparity between the two forgoing views of Plaintiff Aaron, the Board Termination can only be deemed to be a punishment of Plaintiff Aaron (as a male elementary teacher) for utilization of his innovative teaching methods; and

(c)    Women educators within the elementary schools of Defendant RRISD are not subjected to the foregoing.

46.    Facts supporting **NO. NINE**: The Termination as to Plaintiff Aaron's Contract was flawed because Plaintiff's evaluations were not properly considered, resulting in an unlawful Termination, include but are not limited to the following:

(a)    Defendant RRISD failed to tender even one of the Defendant RRISD annual evaluations of Plaintiff Aaron;

(b)    Plaintiff Aaron offered numerous of his Defendant RRISD annual evaluations, which consistently showed a strong proficiency and continuing improvement;

(c)    Women educators within the elementary schools of Defendant RRISD are not subjected to the foregoing.

47.    Facts supporting **NO. TEN**: The Termination as to Plaintiff Aaron's Contract was an arbitrary and capricious decision, resulting in an unlawful Termination, include but are not limited to the following:

(a)    By offering only the unreliable and hearsay evidence and testimony of the RRISD Women Derived Student Statements, the RRISD Women Employee Statements, and the RRISD Women Witnesses, Defendant RRISD offered no credible, reliable, or uncontroverted evidence in support of the False Allegations;

     (b)     The testimony of Plaintiff Aaron's Witnesses, based on actual and personal knowledge of the underlying issues, controverted the False Allegations; and

     (c)     Women educators within the elementary schools of Defendant RRISD are not subjected to the foregoing.

48.    Facts supporting **NO. ELEVEN**: The Termination as to Plaintiff Aaron's Contract was an act of discrimination based on the male gender of Aaron, include but are not limited to the following:

     (a)     Plaintiff Aaron is a male, who was a teacher at Bluebonnet ES;

     (b)     The key allegations that started the Original Inquisition Prosecution as to Plaintiff Aaron were brought by Ms. Martinez, a female;

     (d)     Additional statements fueling the fire of the Original Inquisition Prosecution as to Plaintiff Aaron included statements by Ms. Taylor, Ms. Kennedy, Ms. Reiger, and Ms. Barrera;

     (e)     The RRISD Investigation was supervised and coordinated by Ms. Vierra, Ms. Amacher, Ms. Rieger, and Ms. Barrera;

     (f)     Male teachers within the elementary schools of Defendant RRISD who do not teach sports are few and far between;

     (g)     Male teachers within the elementary schools of Defendant RRISD are improperly harassed, reprimanded, and sanctioned at a far higher level than the female elementary

teachers, as evidenced by the fact that the Board had not heard any non-renewals of female teachers;

(h)   The RRISD Women Lawyer Interrogations were conducted by women only;

(i)   Although Plaintiff Aaron's Termination was supported by Samuel Soto, a male, such support was merely an effort to "keep the peace" within the female educators at Bluebonnet ES;

(j)   Although Plaintiff Aaron's Termination was supported by a male superintendent (Steve Flores), Superintendent Flores, such support was merely an effort to "keep the peace" within the female educators at Bluebonnet ES;

(k)   Although Plaintiff Aaron's Termination by the Board did include certain male members of Board, such support was merely an effort to "keep the peace" within the female educators at Bluebonnet ES and within Defendant RRISD as a whole;

(l)   No negative employment actions were taken against the women employees of Defendant RRISD who testified in support of Aaron but were harshly criticized and cross-examined during the Original Inquisition Prosecution; and

(m)   Women educators within the elementary schools of Defendant RRISD are not subjected to improper and unjust treatment that Plaintiff Aaron was subjected to.

**PART TWO:** *The Retaliatory Inquisition of Plaintiff Aaron.*

49.   On June 11, 2019, Plaintiff Aaron filed a public lawsuit in the Western

District of Texas, Austin Division, under Cause No. 1:19-cv-602 ("First Lawsuit")

alleging § 1983 civil right violations for the actions set forth in the Original Inquisition Prosecution.[1]

50.     However, Defendant RRISD was not done discriminating against Plaintiff Aaron. After the filing of the First Lawsuit, Defendant RRISD started its "Retaliatory Inquisition" into Plaintiff Aaron.

51.     The Retaliatory Inquisition began with a public witch hunt alleging that Plaintiff Aaron had been having inappropriate discussions (about the First Lawsuit") with a member of the Board of Defendant RRISD. The foregoing with hunt was again, directed by Ms. Carpenter, a woman.

52.     After public meetings including the public disclosure of Plaintiff Aaron, Aaron was cleared of any wrongdoing as to discussions with the Board, yet the harm to Plaintiff was already done.

53.     But, Defendant RRISD was not still yet done with Plaintiff Aaron. In a subsequent Board meeting regarding a complaint brought by Ms. Carpenter (as counsel for Defendant RRISD), Plaintiff Aaron was again publically discussed and trashed for Aaron's prior actions and the filing of the First Lawsuit.

---

[1] The First Lawsuit was dismissed for allegedly failing to establish "municipal liability" on the part of Defendant RRISD and is currently on appeal before the Fifth Circuit Court of Appeals under Case No. 20-51027.

54.     To seek redress for the Retaliatory Inquisition,  Plaintiff Aaron filed a

charge of discrimination with the EEOC on December 11, 2019 ("EEOC Charge").

55.     Plaintiff Aaron's basis for the EEOC Charge is that:

    a.  On June 11, 2019, Aaron filed a federal lawsuit alleging
        wrongful termination amongst other things against RRISD;

    b.  In retaliation for the filing of this above stated lawsuit, RRISD
        initiated a smear campaign against Aaron's reputation;

    c.  In initiating the Smear Campaign against Aaron, RRISD
        embarked on an erroneous investigation against the RRISD
        Board President on an anonymous tip that the Board President
        had communicated with Aaron. In August 2019, the report of
        investigation into the RRISD Board President was made
        public via internet and local newspapers. The report
        exonerated the Board President but negatively implicated
        Aaron. The public domain of the report continues to damage
        Aaron's reputation and his ability to gain employment;

    d.  In a subsequent complaint by the general counsel for RRISD
        against the Board of Trustees, RRISD continued to refer to
        Aaron by name and further continued with the lies and smear
        campaign against Aaron; and

    e.  As a result of the smear campaigns driven by RRISD, Aaron's
        name is publicly known in the community including the
        internet with untruthful stories about him. Such campaigns
        have been detrimental to Aaron's chances at obtaining gainful
        employment.

56.     Plaintiff Aaron's EEOC Charge was accepted by the EEOC and logged

as Charge number 450-2020-01533. The COVID pandemic breaking out soon after

EEOC Charge was formally accepted resulted in the EEOC being in various stages of delays and abeyance.

57.     On November 20, 2020, Plaintiff Aaron received his "Right to Sue Letter" from the United States Department of Justice. This current lawsuit is brought within the time limits of the issued Right to Sue Letter, and Plaintiff Aaron seeks relief under Title VII.

### *Harm Suffered by Plaintiff Aaron.*

58.     Plaintiff Aaron has suffered severe physical, emotional, and economic harm (including without limitation insufficient pay and lost pay) as a result of the discriminatory actions committed by Defendant RRISD in violation of Title VII, and Aaron shall suffer future physical, emotional, and economic harm.

59.     The Title VII Violations committed by Defendant RRISD as to Plaintiff Aaron were intentional and in bad faith, made with full knowledge that the damage to Plaintiff Aaron would follow Aaron  for the rest of his life, constituting conscious indifference by Defendant RRISD.

60.     Texas law deems Plaintiff Aaron's Contract to create a property interest that Aaron holds.

### *Defendant's Action Under the Color of State Law.*

61.     The following individuals, who at all material times were employees, agents, and representatives of Defendant RRISD, committed, assisted in the commission of, and/or knew about and failed to correct the Title VII Violations of Plaintiff Aaron:

> (a)     Steve Flores, then Superintendent of Defendant RRISD;
>
> (b)     Sandra Carpenter, then an attorney employed by Defendant RRISD; and
>
> (c)     Various members of the Board of Defendant RRISD at the time of the Retaliatory Inquisition.

62.     The referenced administrators and employees and Board Members, participating in Defendant RRISD's Title VII Violations as to Plaintiff Aaron, are the applicable persons delegated with implementing and were implementing the policies and customs of Defendant RRISD when committing the Title VII Violations of Plaintiff Aaron.

63.     Further, if such policies are not, in fact written, each of the administrators participating in Defendant RRISD's Title VII Violations as to Plaintiff Aaron were implementing the policies and customs of Defendant RRISD in accord with the customs and practices of Defendant RRISD.

64.    Finally, the Board itself (as the formal policy maker of Defendant RRISD) held the Retaliatory Inquisition  against Plaintiff Aaron violating Title VII Violations as to Aaron.

65.    Defendant RRISD's Title VII Violations against Plaintiff Aaron represent actions of complete and deliberate indifference to  Aaron.

### *Administrative Remedies.*

66.    There are no administrative remedy preconditions ("Preconditions") required prior to seeking relief under the laws being invoked herein by Plaintiff Aaron other than filing the EEOC Charge and receiving the subsequent Right to Sue Letter. Even if other Preconditions did exist, the actions of Defendant RRISD have shown that such efforts would be futile.

67.    As a result of Defendant RRISD's Title VII Violations targeted at Plaintiff Aaron, Plaintiff Aaron was forced to engage an attorney and pursue this action to redress such wrongs.

68.    All conditions precedent to Plaintiff Aaron bringing these claims have been met.

## E. PLAINTIFF'S CAUSES OF ACTION

69.    Plaintiff Aaron incorporates by reference the facts set forth in Article D: FACTUAL ALLEGATIONS hereof.

## COUNT ONE: VIOLATION OF TITLE VII

70.     Defendant RRISD discriminatory acts against Plaintiff Aaron in violation  of  Title VII have caused Plaintiff John to suffer a loss of benefits and created economic losses, including all actual, consequential, continuing, and future compensatory damages, for which Plaintiff Aaron now sues Defendant RRISD in accord with Title VII.

71.     Defendant RRISD discriminatory acts against Plaintiff Aaron in violation  of  Title VII have caused Plaintiff John to suffer a loss of benefits and created mental and emotional distress and damages, including all actual, consequential, continuing, and future compensatory damages, for which Plaintiff Aaron now sues Defendant RRISD in accord with Title VII.

## F.  OTHER REQUESTED RELIEF.

72.     In seeking redress with the Court for the foregoing claims, Plaintiff John is also entitled to:

(a).    Punitive damages, where allowed by law;

(b)     Reimbursement of the attorneys' fees incurred to pursue this matter;

(c)     where permitted, pre and post judgment interest, at the highest rates permitted by law; and

(d)     recovery of costs of court.

73.     Finally, Plaintiff Aaron hereby requests a trial by jury in this lawsuit.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Aaron respectfully prays that upon final trial of this matter John recover a judgment against Defendant RRISD for:

(a)     Plaintiff's actual and consequential damages;

(b)     Exemplary damages in the manner requested above;

(c)     Plaintiff's reasonable and necessary attorney's fees;

(d)     Prejudgment and post judgment interest, as applicable;

(e)     Plaintiff's costs of court; and

and further, any and all such other relief, legal and equitable, as to which Plaintiff Aaron may be justly entitled.

Respectfully submitted,

Gorman Law Firm, pllc

By:_____
    Terry P Gorman, Esq. (lead)
    Texas Bar No. 08218200
    tgorman@school-law.co
901 Mopac Expressway South, Suite 300
Austin, Texas 78746
Telephone: (214) 802-3477 (direct)
Telecopier: (512) 597-1455
**ATTORNEYS FOR PLAINTIFF
AARON WOLBER**